LIEBOWITZ LAW FIRM, PLLC
Richard Liebowitz (SDNY Bar #RL1234)
11 Sunrise Plaza, Ste. 305
Valley Stream, NY 11580
Telephone: (516) 233-1660
Email: rl@liebowitzlawfirm.com

*Attorneys for Plaintiff Daniel Fellner*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Daniel Fellner, | Case No. 2:19-cv-01719 (DJH) |
| Plaintiff, | Hon. Diane J. Humetewa |
| - against - | **MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| Travel 4 All Seasons, LLC, | |
| Defendant. | |

Plaintiff Daniel Fellner ("Plaintiff or "Fellner") respectfully submits this memorandum of law in opposition to defendant Travel 4 All Seasons, LLC ("Defendant")'s motion for summary judgment to dismiss the action on grounds of fair use under 17 U.S.C. § 107.

# INTRODUCTION

**"The fair use doctrine is not a license for corporate theft, empowering a court to ignore a copyright whenever it determines the underlying work contains material of possible public importance."**

*Roy Export Co. Establishment of Vaduz, Liechtenstein*, 503 F.Supp. 1137, 1144 (2d Cir. 1980).]

It is hard to imagine a case where the warning of the *Roy Export* court about the limitations of the fair use doctrine could be more appropriate than the present case. Far from being a clear-cut case of fair use, this action presents a textbook example of corporate theft where Defendant, a *for-profit* company, knowingly misappropriated Plaintiff's Literary Work for the commercial purpose of generating content for (and thereby luring viewers to) their website, which is supported by commercial advertisements.

The Literary Work at issue is a copyrighted article written by Plaintiff which describes the popularity of pickleball on holiday cruise ships (the "Literary Work"). Plaintiff's work appeared in USA Today, an authorized licensee, just four days before the infringement took place.

Plaintiff is an Arizona-based professional journalist and travel writer with over a decade of experience. He covered the recreational sport of pickleball for purposes of news reporting and professional travel writing.

Defendant has moved to dismiss the action on grounds of fair use under 17 U.S.C. §107. As discussed more below, Defendant's fair use defense fails as a matter of law. Fundamentally, a fair use defense should be rejected outright where, as here, there is no transformative effect because the secondary user (Defendant) has merely republished a news article about the identical subject matter described in the original Literary Work at issue.

Defendant's fair use argument also fails because Defendant's unauthorized use of the Literary Work usurped a fully functioning licensing market for the work as Plaintiff licensed his work to a competing website which reports on travel-related news.  If Defendant's practice of shoplifting literary content from other licensed users were permitted, it would relegate travel journalists to a single licensing fee and would allow every other publisher to free-ride off the labor of that author's copyright.  News organizations would also be less likely to bear the expense of dispatching their own journalists to cover newsworthy subject matter, thereby frustrating the Copyright Act's purpose of maximizing the quantity and quality of works available to the public.

As such, the Defendant's motion for summary judgment should be denied.

## STATEMENT OF FACTS

### A.    The Parties

Plaintiff Daniel Fellner is an Arizona-based professional journalist who licenses his photographs and text for a fee.  [Declaration of Richard Liebowitz ("Liebowitz Declr.") ¶ 2]  Plaintiff has a Master degree in Journalism (OSU), is a professor of travel writing at Arizona State University for 10 years, has published over 100 travel articles including in USA Today, and is a member of the American Society of Travel Writers. [Liebowitz Declr. ¶ 3; Interrogatory Response No. 4]

Defendant is a for-profit entity which publishes news content relating to recreational travel [Liebowitz Declr. ¶ 4]

### B.    The Literary Work At Issue

Fellner wrote an article about the growing popularity of Pickleball on cruise ships [Liebowitz Declr, ¶ 5]  Plaintiff wrote some of the article in Shanghai, China and some in Arizona in March 2018. [*Id.*, Interrogatory Response No. 11] To prepare

the Literary Work, Plaintiff contacted Pickleball Association, arrange interview with President, contacted Cruiseline Association, had to get ship's staff to get photographed playing Pickleball, and researched pickleball through Google searches. [*Id*. at ¶ 6, Interrogatory Response No. 12]

### C.   Licensing of the Literary Work to Mainstream Publishers

Fellner then licensed the Literary Work to third-party media companies, namely USA Today and Arizona Republic.  [*Id*. at ¶ 7, Interrogatory Response No. 13]

On March 30, 2018, Arizona Republic initially published Fellner's Literary Work in an article entitled *Pickleball at sea? These cruise ships court fans with facilities.*  [*Id*. at ¶ 8, Ex. C] On April 1, 2018, USA Today published Fellner's work in an article entitled *Pickleball at sea? These cruise ships court fans with facilities. .* [*Id*. at ¶ 9]

Fellner is the owner and author of the Literary Work, which was registered with the U.S. Copyright Office and was given Copyright Registration Number TX 8-559-608. [*Id*. at ¶ 10, Ex. D]

### D.   Defendant's Infringement

On April 5, 2018, which was subsequent to the publication of the Literary Work in USA Today and Arizona Republic, Defendant posted the Literary Work on its commercial website in an article entitled *Pickleball in demand on Cruise Ships!* (the "Infringing Article.")  [*Id*. at ¶ 11, Ex. D]  In the Infringing Article, commercial advertisements appeared adjacent to the display of Plaintiff's Literary Work. [*Id*. at ¶ 12]

Defendant did not license the Literary Work from Plaintiff, or otherwise ask for Plaintiff's permission to republish the Literary Work. [*Id*. at ¶ 13]

In the Infringing Article, Defendant did not offer any commentary or criticism directed at the Literary Work itself. Instead, Defendant merely expropriated Plaintiff's intellectual property to save itself the time and expense of commissioning an original piece of journalism or otherwise licensing the Literary Work from Plaintiff.

Given that Plaintiff licensed the Literary Work to Arizona Republic and USA Today, there was an actual market demand for the Literary Work. Further, if every second-hand news organization was permitted to republish literary content, travel journalists would be relegated to a single licensing fee. Moreover, every downstream news organization would be permitted to free-ride off the labor of travel writers and would avoid having to create its own original content, thereby frustrating the purpose of the Copyright Act.

## **LEGAL STANDARD**

Fair use is an affirmative defense that "presumes that unauthorized copying has occurred, and is instead aimed at whether the defendant's use was fair." *Monge v. Maya Magazine, Inc.*, 688 F.3d 1164, 1170 (9th Cir. 2012). A court "may conclude as a matter of law that the challenged use does not qualify as a fair use of the copyrighted work." *Harper & Row v. Nation Enterprises*, 471 U.S. 539, 560 (1985). Thus, the Court may grant summary judgment dismissing the fair use defense. *Stewart v. Abend*, 495 U.S. 207 (1990).

The Court may even grant summary judgment in the non-movant's favor. *Edson v. Valleycare Health Sys.,* 21 F. App'x 721, 722 (9th Cir. 2001) (a district

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

5

court may *sua sponte* grant summary judgment to the non-movant when the "losing party has had a 'full and fair opportunity to ventilate the issues involved in the motion.') (citation omitted)  As set forth below, examination of the statutory factors demonstrates that Defendant's secondary use of the protected Literary Work does not constitute fair use.

## DEFENDANTS' FAIR USE DEFENSE SHOULD BE DISMISSED AS A MATTER OF LAW

The Copyright Act sets out four factors to consider in determining whether a defendant's use of a copyrighted work is a fair use. These are "(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107; *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 576-77 (1994).  As set forth below, examination of these factors demonstrates that Defendants' secondary use of the Photograph does <u>not</u> constitute a fair use.

### A.   THE FIRST FACTOR WEIGHS HEAVILY AGAINST FAIR USE

The first factor under 17 U.S.C. § 107(1), which addresses the manner in which the copied work is used, is the "heart of the fair use inquiry." *Blanch v. Koons*, 467 F.3d 244, 251 (2d Cir. 2006).  Courts examine at least two sub-factors to determine the purpose and character of use, including whether the secondary use is (1) transformative; and (2) done for commercial purposes. *Monge*, 688 F.3d at 1170.

**(1)   Defendants' Secondary Use is NOT Transformative**

The fair use doctrine "allows for new transformative works that further the public discourse and the free exchange of ideas in order to promote science and the arts." *See Campbell*, 510 U.S. at 579.  The central purpose of the inquiry is to determine whether "the new work merely supersedes the objects of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message." *Ringgold v. Black Entertainment Television, Inc.*, 126 3d 70, 79 (2d Cir. 1997) (citations omitted).

As demonstrated below, Defendant's use was not transformative because Defendant did not report on any political or social controversy that arose because of the very existence of the Literary Work itself.  Nor did the Infringing Article transform the original purpose of use or message behind the Literary Work. Defendant merely used the Literary Work to report on an identical news story about pickleball on cruise ships.

### *(a) The Newsworthiness of the Subject Matter (i.e., Pickleball on Cruise Ships) is Not Dispositive*

Defendant argues that its use of the Literary Work is fair because it was contained within a news report. The preamble to the fair use statute does list "news reporting" as an illustrative basis supporting fair use under this factor.  17 U.S.C. § 107.  However, the Supreme Court has made clear that "[t]he promise of copyright would be an empty one if it could be avoided merely by dubbing the infringement a fair use 'news report' of the [work]." [*Harper & Row v. Nation Enterprises*, 471 U.S. 539, 557 (1985).][1]

---

[1] *See also Swatch Group Management Services Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 85 (2d Cir. 2014) ("A news organization thus may not freely copy creative expression solely because the expression itself is newsworthy."); *Murphy v. Millennium Radio*

In *Barcroft Media, Ltd. v. Coed Media Group, LLC*, No. 16-cv-7634 (JMF), 2017 WL 5032993 (S.D.N.Y. Nov. 2, 2017), the court explained that the preferential treatment accorded to "news reporting" under the preamble to Section 107 only applies to news reporting of the copyrighted work itself; <u>not</u> news reporting about the subject matter depicted in the copyright work. [*Barcroft,* 2017 WL 5032993 at *6 ("Display of a copyrighted image or video may be transformative where the use serves to illustrate criticism, commentary, or a news story *about that work*." (emphasis added).][2]

### *(b) Defendant's Article Did <u>Not</u> Report on Any Controversy that Arose Because of the Literary Work Itself*

In the context of news reporting, an original work may be transformed where "the copyrighted work is itself the subject of the story, transforming the function of the work in the new context." *Barcroft*, 2017 WL 5032993, at *6.  Thus, "a depiction of a controversial photograph might fairly accompany a work of commentary or criticism about the artistic merit or appropriateness of the photograph." *Id.* (*citing Nunez v. Caribbean Int'l News Corp.*, 235 F.3d 18, 25 (1st Cir. 2000) (fair use found where salacious photographs of Miss Puerto Rico Universe were published by newspaper to comment on the political controversy surrounding the existence of the photographs and their impact on the beauty queen's

---

*Grp. LLC*, 650 F.3d 295, 307 (3d Cir. 2011) ("News organizations are not free to use any and all copyrighted works without the permission of the creator simply because they wish to report on the same events a work depicts."); *Psihoyos v. National Examiner*, No. 97-cv-7624 (JSM), 1998 WL 336655, *3 (S.D.N.Y. June 22, 1998) ("The mere fact the photo depicts a newsworthy item does not justify commercial exploitation of it.").

[2] *Accord Gossip Cop*, 196 F. Supp. 3d at 406 n.6 ("Defendant confuses the situation in which the photograph is the story . . . and the scenario present here, in which the contents of the photograph are of some public interest . . . ); *Hirsch v. Complex Media, Inc.*, No. 18-cv-5488 (CM), 2018 WL 6985227, at *6 (S.D.N.Y., December 10, 2018) ("Complex has not established that its Video did anything more than merely describe the subject of Hirsch's Photograph, newsworthy or not. That conduct alone does not suffice as transformative.").

qualifications to retain the crown); *Konangataa v. Am. Broadcasting Companies, Inc.,* No. 16-CV-7382 (LAK), 2017 WL 2684067, at *1 (S.D.N.Y. June 21, 2017) (fair use found where publishers reported on social controversy surrounding a father's lack of discretion in posting a live-streaming video that graphically depicted the birth of his child)).

The reason why *Nunez* and *Konangataa* constitute fair use is because the media publisher in each case reported on a political or social controversy that arose because of the copyrighted photograph itself, which is not the situation here. *Accord Otto* at *8.

In contrast, no transformation exists where the protected work is merely used "as [an] illustrative aid[]" to depict the subjects described in the news article. [*See, e.g., Barcroft,* 2017 WL 5032993, at *6 (fair use rejected because articles did not comment on, criticize, or report news *about the Images themselves*; instead, they used the Images as illustrative aids because they depicted the subjects described in its articles.).]

The *Barcroft* court explained that the defendant's argument there, like Defendants' fair use argument here, if accepted, would eliminate copyright protection <u>any time a copyrighted photograph was used in conjunction with a news story about the subject of that photograph</u>. As the *Barcroft* court emphatically held, that is plainly not the law. *See also Mavrix Photographs LLC v. Sandra Rose LLC*, 2016 WL 6246408 *2 (C.D. Cal. April 6, 2016) (finding that even though defendant's inclusion of celebrity photos on its website qualified as "news reporting," there was no evidence that defendant had transformed the celebrity photographs).[3]

---

[3] *See also Gossip Cop*, 196 F.Supp. at 404-405 (not transformative where the secondary use of "photograph seems intended as a general illustration of the [celebrity] couple . . . [and] Defendant [does not] comment or report on the images in question . . .); *Psihoyos*, 1998 WL 336655, *3 (defendant's "use is not

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

9

Here, like the cases in *Otto*, *Barcroft*, *Gossip Cop*, *Mavrix* and *Psihoyos*, Defendant used the Literary Work to merely report on an identical news story about subject matter previously described in the Literary Work. On its face, Defendant's Infringing Article does nothing more than expropriate Plaintiff's text to report on the identical subject matter, namely pickleball, and report on non-controversial facts.[4] [Liebowitz Declr. ¶ 11, Ex. E]

Unlike cases where the secondary publishers reported on a public controversy <u>sparked by the very existence of the protected work itself</u>, Defendant here has failed to offer any commentary or criticism directed at the Literary Work itself. Accordingly, there is no transformative effect and the fair use defense fails.

### *(c) Defendant Has <u>Not</u> Transformed the Original Intended Use of the Literary Work; Nor Altered its Meaning*

"[U]se of copyrighted material that 'merely repackages or republishes the original is unlikely to be deemed a fair use' and a 'change of format, though useful' is not transformative." *Associated Press v. Meltwater U.S. Holdings*, 931 F.Supp.2d 537, 551 (S.D.N.Y. 2013) (*quoting Infinity Broadcast Corp. v. Kirkwood*, 150 F.3d 104, 108 & n. 2 (2d Cir. 1998) (citation omitted)). A secondary use has "no transformative, because its piece uses the photo to show what it depicts."); *Otto*, 2018 WL 6510801, *8 ("the use of an image solely to illustrate the content of that image, in a commercial capacity, has yet to be found as fair use in this District.")

---

[4] Unlike the cases in *Nunez* and *Konangataa,* where the publishers reported on a public controversy sparked by the very existence of the copyrighted works, Defendant here failed to offer any commentary or criticism directed at the copyrighted works at issue. The Infringing Article merely reports on what the Literary Work describes. Accordingly, there can be no transformative effect as a matter of law.

transformative effect [where the article] display[s] the Images in the same manner and for the same purpose as they were originally intended to be used." *Barcroft Media,* 2017 WL 5032993, at *6; *see also Psihoyos,* 1998 WL 336655 at *3 (rejecting fair use defense where purpose of secondary use was to display it "for precisely a central purpose for which it was created").

Here, Defendant's Infringing Article merely reports on the identical subject matter already covered by Plaintiff's Literary Work. [Liebowitz Declr. ¶ 11, Ex. E]Plaintiff created the Literary Work for the purpose of licensing to news outlets and media organizations. [Liebowitz Declr. ¶ 6-7]. Plaintiff then licensed his work to a competing news organization in the travel segment. [Liebowitz Declr. ¶ 7]. Likewise, the Infringing Article used the Literary Work for the same exact purpose: a news report about the popularity of pickleball on cruise ships. [Liebowitz Declr. ¶ 11, Ex. E]

Further, Defendant did not transform the original meaning behind the Literary Work, which conveys the message that pickleball in is demand on cruise ships. *See Otto,* 345 F.Supp.3d at 426 ("It would be antithetical to the purposes of copyright protection to allow media companies to steal personal images and benefit from the fair use defense by simply inserting the photo in an article which only recites factual information—much of which can be gleaned from the photograph itself."); *Psihoyos*, 1998 WL 336655 at *3 (rejecting fair use defense where purpose of secondary publication was to use photograph "for precisely a central purpose for which it was created").]

**(2)   Defendant's Use is Commercial Rather Than Non-Profit**

Defendant's primary argument is that it used the Literary Work for a non-commercial purpose. But the evidence on record shows that Defendant is a for-profit company and used commercial advertising to promote the Infringing Article.

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

11

[Liebowitz Declr. ¶¶ 4, 11, Ex. E] The fact that Defendant used Plaintiff's work for a commercial purpose also weighs against a finding of fair use. *Psihoyos*, 1198 WL 336655, at *3 (*citing Campbell*, 510 U.S. at 583-84). The "crux of the profit/nonprofit distinction is . . . whether the user stands to profit from the exploitation of the copyrighted material without paying the customary price." *Harper & Row*, 471 U.S. at 562.

Here, there can be no dispute that Defendant is a for-profit publisher which disseminates news content on its website. [Liebowitz Declr. ¶ 4] Commercial advertisements appeared alongside the Literary Work on Defendant's Website [Liebowitz Declr. ¶¶ 4, 11, Ex. E], thereby evincing Defendant's intent to exploit Plaintiff's work for a commercial purpose. *See, e.g., Hirsch v. Complex,* 2018 WL 6985227, at *6 (an inference of commercial use may be drawn where copyrighted work was displayed adjacent to advertisements); *Richard Feiner & Co., Inc. v. H.R. Industries, Inc.*, 10 F.Supp.2d 310, 314 (S.D.N.Y. 1998) (finding that commercial advertisements appearing alongside the unauthorized use of photographs demonstrated a defendant's commercial purpose).

Accordingly, the record evidence shows that Defendant sought to profit commercially from Plaintiff's copyright without paying the customary price, which weighs heavily against a finding of fair use.

B.  **THE SECOND FACTOR WEIGHS AGAINST FAIR USE**

The second fair use factor examines the "nature of the copyrighted work." [17 U.S.C. § 107(2).] Courts consider "(1) whether the work is expressive or creative, with a greater leeway being allowed a claim of fair use where the work is factual or information, and (2) whether the work if published or unpublished." *Blanch*, 467 F.3d at 256.

---

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

12

"The mere fact that the original is a factual work . . . should not imply that others may freely copy it," as "authors of factual works, like authors of fiction, should be entitled to copyright protection of their protected expression." *Authors Guild v. Google, Inc.*, 804 F.3d 202, 220 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 1658 (2016).

Here, the Literary Work is creative in nature as it is the product of a professional travel writer with many years experience in licensing his work to the media. [Liebowitz Declr. ¶ 3] Moreover, in creating the Literary Work, Plaintiff exercised a personal and creative choice in the selection of subject matter and the text used to describe that subject matter. [*Id.*] Accordingly, Fellner's work should be deemed creative in nature. This factor therefore weighs against fair use.

### C.  THE THIRD FACTOR WEIGHS AGAINST FAIR USE BECAUSE DEFENDANT PUBLISHED A WHOLESALE REPRODUCTION OF THE LITERARY WORK

The third factor bearing on fair use is "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." 17 U.S.C. § 107(3). The question is whether "the quantity and value of the materials used are reasonable in relation to the purpose of the copying." *Campbell*, 510 U.S. at 586. The Court should consider whether the portion taken is "essentially the heart" of the copyrighted expression. *NXIVM Corp.*, 364 F.3d at 480 (citation omitted). The "most relevant" question for this factor is whether the infringer has taken "no more" than is necessary. *Infinity Broadcast Corp.*, 150 F.3d at 110. "[T]he more of a copyrighted work that is taken, the less likely the use is to be fair." *Id.* at 109.

As a quantitative matter, Defendant has taken the vast majority of Plaintiff's Literary Work and re-published it on its Website. [Liebowitz Declr. ¶ 11, Ex. E] This fact alone weighs against fair use. *See Associated Press*, 931 F.Supp.2d at 558 ("appropriation of a copyrighted work in its entirety weighs against a finding of fair

use"). As a qualitative matter, Defendant has used more of the copyrighted work than was necessary to accomplish its purpose of news reporting. *See Rogers*, 960 F.2d at 311. The Literary Work was reproduced by Defendant without any substantive modification or alteration. [Liebowitz Declr. ¶ 11, Ex. E] Defendant's wholesale reproduction of the Literary, without any aesthetic alteration, demonstrates the works' qualitative value. *See Harper & Row*, 471 U.S. at 565 ("the fact that a substantial portion of the infringing work was copied verbatim is evidence of the qualitative value of the copied material, both to the originator and to the plagiarist who seeks to profit from marketing someone else's copyrighted expression.").[5]

### D.  THE FOURTH FACTOR WEIGHS AGAINST FAIR USE BECAUSE THERE WAS ACTUAL MARKET HARM AS WELL AS HARM TO THE POTENTIAL MARKET

The final fair use factor considers "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4).[6] "[A] copyright owner is not required to show that actual harm has come to her, *Sony Corp.*, 464

---

[5] Moreover, Defendant's copying of the Literary Work was unnecessary to achieve Defendant's news reporting purpose. There were several legal alternatives available to Defendant: (1) Defendant could haver commissioned its own travel writer to cover and report on the popularity of pickleball on cruise ships ; (2) or Defendant could have obtained a license directly from Plaintiff before publishing its story. By opting to expropriate the Literary Work, Defendant has taken more than what was "necessary" to effectuate its news reporting purpose.

[6] This factor "requires courts to consider not only the extent of market harm caused by the particular actions of the alleged infringer, but also whether unrestricted and widespread conduct of the sort engaged in by the defendant would result in a substantially adverse impact on the potential market for the original." *Ringgold*, 126 F.3d at 80-81 (*citing Campbell*, 510 U.S. at 590).

U.S. at 451, but must show merely a 'potential' effect on the market for the copyrighted work, *Harper & Row*, 471 U.S. at 568–69." [*Balsley*, 691 F.3d at 761.] As demonstrated below, Defendant's secondary use impaired both the actual and potential market for the Literary Work. At a minimum, the impact of Defendant's infringement on the market for the Literary raises an issue of fact that cannot be decided on – and defeats – this motion.

### (1) The Court May Presume Market Harm

As a threshold matter, the Court may presume market harm because Defendant's secondary use constituted a mere duplication of Plaintiff's original literary work. *See Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 450 (1984) (holding that "every commercial use of copyrighted material is presumptively an unfair exploitation of the monopoly privilege that belongs to the owner of the copyright").] "A presumption of market harm "makes common sense . . . when a commercial use amounts to mere duplication of the entirety of an original." *Campbell*, 510 U.S. at 591.

Under *Sony,* "there is a presumption of market harm [where] Defendant's use of . . . photographs were not transformative." *Ferdman v. CBS Interactive, Inc.*, 17-cv-1317 (PGG), 2018 WL 4572241, *19 (S.D.N.Y. Sept. 21, 2018); *see also Hustler Magazine, Inc. v. Moral Majority, Inc.*, 796 F.2d 1148, 1155 (9th Cir. 1986) (where the defendant has used an entire work, it is likely that the secondary use will supersede the original in the market).

Here, *Sony's* presumption of market harm applies, which weighs against a finding of fair use.

### (2) Defendants' Use Functioned as an Actual Market Replacement

Defendant's secondary use impaired the actual market for the Literary Work because there was a fully functioning market demand for Plaintiff's work. *See*

*Associated Press*, 931 F.Supp.2d at 559 ("Where there is a fully functioning market for the infringer's use of the copyrighted material, <u>it will be difficult for the infringing party to show that it made fair use without paying a licensing fee</u> (emphasis added)") (*citing Harper & Row*, 471 U.S. at 566 n. 9).  This is also evidenced by the fact that a competing news organization published the Literary Work.

Here, an actual market existed for the Literary Work, as demonstrated by authorized users USA Today and Arizona Republic.  [Liebowitz Declr. ¶ 7-9, Ex. C] Defendant's unauthorized use clearly supplanted the market in which Fellner had a reasonable expectation to earn licensing revenue.  *See, e.g., Fitzgerald v. CBS Broadcasting*, 491 F.Supp.2d 177, 189 (D. Mass. 2007) ("CBS's use of the photographs is paradigmatic of the only market the photographs could reasonably have: licensing to media outlets"); *Otto* at *12 ("Publishing the Photograph without permission essentially destroys the primary market for its use.").

### (3) *Defendant's Use Also Curtailed the Potential Market for the Literary Work*

Defendant's secondary use also impaired the potential market for the Literary Work because "unrestricted and widespread conduct of the sort engaged in by the defendant . . . would result in the substantially adverse impact on the potential market for [licensing of] the original." [*Campbell*, 510 U.S. at 590.]  "Under section 107, 'potential market' means either an immediate or a delayed market, and includes harm to derivative works." *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 845 (11th Cir.1990).

Defendant's unauthorized posting of Plaintiff's Literary Work made it unlikely that the market would purchase the Literary Work from Plaintiff and therefore diminished the licensing value of the copyright.  *See Harper & Row*, 471 U.S. 566-67

("[f]air use, when properly applied, is limited to copying by others which does not materially impair the marketability of the work which is copied.") (*citing* S. Rep. No. 94-473 (1975) ("[A] use that supplants any part of the normal market for a copyrighted work would ordinarily be considered an infringement.").

Here, Plaintiff was and is entitled to profit from the market demand generated by initial publication of his Literary Work. *See* 17 U.S.C. § 106. But because Defendant engaged in wholesale copying of the Literary Work, any authorized market for the original work was severely diminished. *See Otto* at *12 ("Because the images are nearly identical, Defendant's unauthorized publication impacts the market for the work - simply put, more supply, less demand. If the practice of using photographs without licensing were to become widespread, 'the market for such images would diminish correspondingly: [i]f media outlets could use such images for free, there would be little or no reason to pay for works' (*citing Barcroft*, 297 F.Supp.3d at 355.").

Simply put, Defendant deprived Plaintiff of the opportunity to exploit the value of his copyright during its peak demand in the marketplace for news content. Consequently, by dismissing the fair use defense here, the Court will prevent media companies' widespread practice of appropriating images from competing news organizations without first obtaining authorization from the original copyright holder.

In sum, all four factors weigh heavily against fair use.

**E.   THE COURT'S SUMMARY DISMISSAL OF THE FAIR USE DEFENSE WILL PROMOTE THE PURPOSE OF THE COPYRIGHT ACT**

"[T]he copyright law bestows a monopoly right on the copyright owner to encourage artistic creativity." *Roy Export Co.*, 503 F.Supp. at 1144. "The ultimate test of fair use is whether the copyright law's goal of promoting the Progress of

Science and useful Arts would be better served by allowing the use than by preventing it." *Bill Graham Archives*, 448 F.3d at 608 (citation omitted). Accordingly, "rejection of the fair use defense [furthers] the ultimate aim of the Copyright Act, which is to stimulate the creation of useful works for the public good." *Associated Press,* 931 F.Supp.2d at 561 (*citing Harper & Row*, 471 U.S. at 562).

The Court's dismissal of the fair use doctrine in this case would further the purpose of the Copyright Act on several grounds.  <u>First</u>, it would deter news publishers from freely appropriating literary content from other news organizations.  <u>Second</u>, it would cause publishers to independently create their own news content, thereby maximizing the quality and quantity of expressive works available to the public.  <u>Third</u>, a finding against fair use would encourage news publishers to license literary content, thereby facilitating a journalist's ability to earn licensing fees from secondary users.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment should be DENIED in its entirety.  The Court should also *sua sponte* dismiss the fair use defense as a matter of law.

Respectfully Submitted:

DATED: November 25, 2019         LIEBOWITZ LAW FIRM, PLLC

By:  /s/richardliebowitz
Richard Liebowitz

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

*Attorneys for Plaintiff*
*Daniel Fellner*

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**