NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Daniel Fellner,<br><br>    Plaintiff,<br><br>v.<br><br>Travel 4 All Seasons LLC,<br><br>    Defendant. | No. CV-19-01719-PHX-DJH<br><br>**ORDER** |

This matter is before the Court on Defendant's Motion for Summary Judgment. (Doc. 33). Plaintiff filed a Response (Doc. 34) and Defendant filed a Reply (Doc. 37). Plaintiff's Response to the Motion for Summary Judgment relies almost entirely on a declaration from Mr. Leibowitz, Plaintiff's former counsel. (Doc. 33-1). During the course of discovery, it appears that Plaintiff requested hardly any discovery, and he did not depose Defendant or its principal, Alfred Hague.[1]

**I.    Background**

Plaintiff filed his four-page Complaint on March 13, 2019, alleging one count of copyright infringement under Section 501 of the Copyright Act. (Doc. 1). Plaintiff is a professional photographer and journalist in Arizona. (*Id.* at 2). Defendant operates a website, its sole asset, which publishes informational travel articles. (Doc. 33-2). The only

---

[1] Although Mr. Liebowitz filed the Response to Defendant's Motion for Summary Judgment on behalf of Plaintiff, he is no longer Plaintiff's counsel of record. (Doc. 44). Mr. Liebowitz has filed hundreds of similar actions in federal courts throughout the country and has repeatedly been cited for misconduct in this District and in many other federal courts throughout the United States. (Doc. 40).

member of Defendant is Alfred Hague, a disabled military veteran, who operates the website as a hobby for other travel enthusiasts like himself. (Doc. 33-1 at 6). Defendant does not have a bank account and has never earned any revenue from the website. (*Id.*) Plaintiff alleges that Defendant reproduced, without permission, a copyrighted article that Plaintiff wrote about Pickleball on cruise ships (the "Article"). (Doc. 1). Plaintiff's Article was previously published by AZ Central and USA Today and was copyrighted. (*Id.*)

Plaintiff alleges that Defendant published the entire Article, including photographs and text, on its website without permission. (*Id.* at 3). Plaintiff demands statutory damages of $150,000 and attorneys' fees and costs. (*Id.*) Defendant argues that it did not post any of Plaintiff's photographs, and further that it only posted a portion of the Article on its website. Moreover, Defendant argues that its posting of the Article falls under the Fair Use Doctrine and did not violate the Copyright Act.

## II.  Legal Standards

The Court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986); *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994). The materiality requirement means "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Substantive law determines which facts are material. *Id.* The dispute must also be genuine, meaning the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 242.

The moving party bears the initial burden of identifying the portions of the record, including pleadings, depositions, answers to interrogatories, admissions, and affidavits that it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. If the moving party meets its initial burden, the opposing party must establish the existence of a genuine dispute as to any material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986). There is no issue for trial

unless there is sufficient evidence favoring the non-moving party. *Anderson*, 477 U.S. at 249. "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* at 249–50. However, the evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "Furthermore, the party opposing summary judgment 'may not rest upon the mere allegations or denials of [the party's] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" *Juarez v. CC Servs., Inc.*, 434 F. Supp. 2d 755, 758 (D. Ariz. 2006).

**III.   Copyright Act**

Under the Copyright Act, "[c]opyright protection subsists . . . in original works of authorship fixed in any tangible medium of expression . . . from which they can be perceived, reproduced, or otherwise communicated." *New York Times Co. v. Tasini*, 533 U.S. 483, 493 (2001). Generally, unauthorized use of copyrighted materials is not permissible. *Id.* However, unauthorized use of copyrighted material is allowed in certain circumstances.

The fair use doctrine was initially developed by courts as an equitable defense to copyright infringement. *Harper & Row, Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539 (1985). Essentially, "the doctrine creates a limited privilege in those other than the owner of a copyright to use the copyrighted material in a reasonable manner without the owner's consent." *Fisher v. Dees*, 794 F.2d 432, 435 (9th Cir. 1986). Congress later codified this legal doctrine. *See* 17 U.S.C. § 107. However, "Congress expressly sought to preserve the doctrine's common law character, leaving courts 'free to adapt the doctrine to particular situations on a case-by-case basis.'" *Fisher*, 794 F.2d at 435. Courts are to consider four factors in determining whether an unauthorized use is a fair use: (1) the

purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work. 17 U.S.C. § 107.

"The task is not to be simplified with bright-line rules, for the statute, like the doctrine it recognizes, calls for case-by-case analysis." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994). Fair use is a mixed question of fact and law but if there are "no genuine issues of material fact, or if, even after resolving all issues in favor of the opposing party, a reasonable trier of fact can reach only one conclusion, a court may conclude as a matter of law whether the challenged use qualifies as a fair use of the copyrighted work." *Hustler Magazine, Inc. v. Moral Majority*, 796 F. 2d 1148, 1151 (9th Cir. 1986). The Statute encourages courts to apply an "equitable rule of reason" to particular claims of infringement. *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 448 (1984).

**IV.  Analysis**

The Court must determine whether Defendant has established a fair use of the copyrighted Article. If so, Defendant is entitled to summary judgment on Plaintiff's single claim of copyright infringement.

As an initial matter, Defendant argues that Plaintiff has failed to proffer any admissible evidence to dispute the facts established in the Motion. Plaintiff provided a Declaration of Mr. Liebowitz, unverified interrogatory responses, and copies of the Article. (Doc. 35). Defendant argues that of the evidence provided, only a single statement can be supported with personal knowledge by Mr. Liebowitz, that he is "lead counsel for Plaintiff Daniel Fellner." (Doc. 35-1). The Court agrees. Plaintiff submitted no authenticated documents, declarations, or admissible evidence of any kind to establish that there are material fact disputes. Under Rule 56(e), if a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule

56(c), the court may consider the fact undisputed for purposes of the motion. As Plaintiff did not provide any admissible evidence to dispute any facts established by Defendant, the Court determines that there are no material facts in dispute. The Court will turn to the Fair Use factors to determine whether Plaintiff's use of the Article was fair.

### A. Whether the Use was for Commercial Purposes

The first factor requires that "the commercial or nonprofit character of an activity be weighed." *Sony Corp. of Am.*, 464 U.S. at 449. "The crux of the profit/nonprofit distinction is not whether the sole motive of the use is monetary gain but whether the user stands to profit from exploitation of the copyrighted material without paying the customary price." *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 562 (1985). "A challenge to a noncommercial use of a copyrighted work requires proof either that the particular use is harmful, or that if it should become widespread, it would adversely affect the potential market for the copyrighted work." *Sony Corp. of Am.*, 464 U.S. at 451. A plaintiff must establish, by a "preponderance of the evidence that some meaningful likelihood of future harm exists." *Id.*

Plaintiff asserts, without supporting evidence, that Defendant profited off of the use of the Article. (Doc. 34 at 12). If Defendant had published the Pickleball Article for a profit-making purpose, such use would be presumptively unfair under this factor. *See Harper & Row Publishers*, 471 U.S. at 562. The contrary presumption is appropriate here, however. Defendant has established that the Article was not posted for any commercial purpose, and indeed did not make any profit. (Doc. 33-1 at 6). Alfred Hague, sole owner of the website, testified that the website is a blog for travel enthusiasts like himself to read. (*Id.*) The information on the website was fully accessible to the public and did not require a membership fee. (*Id.*) Moreover, Defendant has never made a profit from the website and does not have a bank account. (Doc. 33-1 at 6). The Court also considers that Defendant identified Plaintiff as the author of the Article and provided a citation to the original work, in order that any visitor to the website could read the Article in full. (*Id.* at 7). Defendant has since removed the Article, so it will never earn a profit from it. (*Id.*)

The Court finds this factor weighs in favor of finding fair use.

### B. Nature of the Copyrighted Work

The Court must next consider the nature of the Article. "The law generally recognizes a greater need to disseminate factual works than works of fiction or fantasy." *Harper & Row Publishers*, 471 U.S. at 563. The likelihood of finding fair use is greater when "informational" as opposed to more "creative" works are involved. *Marcus v. Rowley*, 695 F.2d 1171, 1176 (9th Cir.1983); *see also Sony Corp.*, 464 U.S. at 455 n. 40 ("Copying a news broadcast may have a stronger claim to fair use than copying a motion picture.").

Plaintiff argues that his Article was not a factual work, but a creative work that only he could have written. (Doc. 34). Moreover, Plaintiff argues that because Defendant did not transform the Article or add commentary to it that this factor favors a finding of copyright infringement. While the work included some of Plaintiff's opinions, the majority of the work was a summation of the history of pickleball and its current popularity on cruise ships. (Doc. 33-1). For instance, one paragraph explained: "Pickleball is a racket sport that combines elements of tennis, table tennis and badminton. Paddles are made of wood or composite materials; the ball resembles a wiffleball. The sport can be played with two or four players, although doubles is far more common." (Doc. 33-1 at 3). Another paragraph states: "Pickleball was invented in the 1960s in Washington state, but only recently has seen a huge growth in popularity; it now routinely attracts more players than tennis in age 55 and older housing developments. The USA Pickleball Association, which is headquartered in Surprise, calls it 'the fastest growing sport in North America.'" (*Id.*) The Article is much closer to a news story than a motion picture. *See Sony Corp.*, 464 U.S. at 455 n. 40. Moreover, only one of the seven paragraphs published on Defendant's website contained personal observations from Plaintiff. (Doc. 33-1 at 3). The Court finds that the majority of the Article is factual in nature and not an original piece or a novel. Moreover, while Defendant did not add anything of substance to the Article to substantially transform it, that is not required for a finding of fair use. *See Campbell*, 510 U.S. at 579

("[T]ransformative use is not absolutely necessary for a finding of fair use."). The Court finds this factor weighs in favor of finding fair use.

### C.  Amount and Substantiality of the Portion Used

Next, the Court must examine the amount and substantiality of the portion of the Article used in relation to the work as a whole. Plaintiff alleges that Defendant published the entire Article, including photographs and text, on its website without permission.[2] (Doc. 1 at 3). Defendant argues that it did not publish any of Plaintiff's photographs on the website. Moreover, Defendant argues that it did not publish the entire Article, but only a portion of it. (Doc. 33).

Plaintiff's allegation that Defendant published the entire Article are clearly false. The original Article, published in AZ Central, contained sixteen separated paragraphs. (Doc. 35-3). The evidence is undisputed that Defendant only published seven paragraphs of the Article on the website. (Doc. 33-1 at 3). In terms of the substantiality of the Article published by Defendant, it did contain the main factual portions of the Article, but did not include other more creative portions, such as Plaintiff's interviews with the president of the national pickleball association, cruise ship activity directors, or cruise ship passengers. (*compare* Doc. 35-3 and Doc. 33-1 at 3). Therefore, the Court finds this factor slightly favors a finding of fair use.

### D.  Effect of the Use on the Potential Market

Where the use of a copyrighted work "has no demonstratable effect upon the potential market for, or the value of, the copyrighted work need not be prohibited in order to protect the author's incentive to create." *Sony Corp of America v. Universal City Studios, Inc*., 464 U.S. 417, 450 (1984). A plaintiff must show "by a preponderance of the evidence that some meaningful likelihood of future harm exists." *Id.* at 451.

Plaintiff argues that the market for his work was diminished because of Defendant's

---

[2] Plaintiff, citing to Liebowitz's Declaration, argues that "Defendant has taken the vast majority of Plaintiff's Literary Work and re-published it on its Website." (Doc. 34 at 13). Ironically, the vast majority of Plaintiff's Response appears to have been copied and pasted from other briefs by Mr. Liebowitz, as the Response almost exclusively discusses the theft of photographs, not written text, and most of the law cited is from out of Circuit. (Doc. 34).

unauthorized publishing of the article. (Doc. 34). Plaintiff has provided no evidence to support this assertion. Plaintiff attempts to label Defendant as a "competing news organization" with the organizations that paid to publish Plaintiff's article, AZ Central and later, USA Today. USA Today has a daily readership of 2.6 million and has thousands of employees, whereas Mr. Hague is the sole operator of Defendant's website. Plaintiff has not provided any admissible evidence to suggest that Defendant is a competing news organization of USA Today, such that the Article's reproduction by Defendant would reduce its economic viability with other large news organizations. It is undisputed that Defendant never made a profit from the Article. (Doc. 33-1 at 6). Moreover, Plaintiff has not established that the unauthorized reproduction reduced Plaintiff's economic opportunities in the market. *See Fisher*, 794 F.2d at 438 (holding that "infringement occurs when a[n infringing work] supplants the original in markets the original is aimed at, or in which the original is, or has reasonable potential to become, commercially valuable"). The Court finds this factor weighs in favor of finding fair use.

**V. Conclusion**

At its core, "[f]air use presupposes 'good faith' and 'fair dealing." *Harper & Row Publishers*, 471 U.S. at 562. The undisputed facts establish that Defendant did not reproduce the Article to attempt to gain a financial benefit to Plaintiff's detriment or for any nefarious reason. Defendant simply thought that the topic of pickleball on cruise ships would be interesting to the relatively few readers who visited his website. There is no evidence to suggest that Defendant's use of the material was anything other than fair, and all four factors weigh in favor of finding fair use. Plaintiff has provided no admissible evidence to the contrary and the Motion for Summary Judgment will be granted.

Accordingly,

…

…

…

…

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Doc. 33) is **granted**.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment accordingly and terminate this action.

Dated this 29th day of September, 2020.

Honorable Diane J. Humetewa
United States District Judge